UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
BOWLING GREEN DIVISION
CIVIL ACTION NO. 1:25-CV-00156-GNS

MELISSA WARSITZ Individually and as
Custodian and Next Best Friend of K.B., a minor                                    PLAINTIFF

v.

METCALFE COUNTY
BOARD OF EDUCATION et al.                                                          DEFENDANTS

### MEMORANDUM OPINION AND ORDER

This matter is before the Court on Defendants' Motion to Dismiss (DN 4).  The motion is ripe for adjudication.

### I.       STATEMENT OF FACTS AND CLAIMS

Plaintiff Melissa Warsitz ("Warsitz") brings this action against Defendants—Metcalfe County Board of Education,[1] Joseph Eaton, the principal of Metcalfe County High School ("Eaton"), Dwayne Hadley, a teacher at Metcalfe County High School ("Hadley"), and unknown employees of Metcalfe County School District—individually and on behalf of her granddaughter K.B., a seventeen-year-old disabled student who attended Metcalfe County Schools.  (Compl. 1-2, DN 1-1).[2]

Warsitz alleges that she and K.B. have been subject to discrimination, mistreatment, and harassment by Defendants since 2020.  (Compl. ¶¶ 4).  Warsitz asserts that Defendants were

---

[1] Defendants state that the correct legal entity is the Board of Education of Metcalfe County, Kentucky.  (Defs.' Mot. Dismiss 1 n.1, DN 4).

[2] All paragraph numbers in citations to the Complaint refer to the numbered paragraphs under the heading "Factual Background."  (Compl. 4).  Because the paragraph numbering restarts in each section, citations to paragraphs outside of this section will be referred to by the Bates page number.

"reluctant" to provide a special education classroom and transportation to K.B.  (Compl. ¶ 5). Warsitz also states that K.B. has been bullied by her peers and teachers:  Hadley "forced" K.B. to explain why she needed access to feminine hygiene products in front of two classrooms; the school continued to display K.B.'s school photo after it was defaced; after Warsitz reported that K.B. heard students talking about "raping girls," Eaton "brushed it off as 'things boys say'"; and after Warsitz reported that a student told K.B. to "go kill herself," Eaton told Warsitz that he had instructed his staff to "keep a better look out."  (Compl. ¶¶ 6-9).

Following these incidents, Warsitz told Eaton she wanted copies of all reports in K.B.'s file.  (Compl. ¶ 9).  When Warsitz arrived at the school to pick up those copies, she was arrested for terroristic threatening, based on Eaton's sworn statement that she had threatened to blow up the school. (CITE).  The grand jury, however, returned a no true bill and the charges were dismissed.  (Compl. ¶¶ 10-12).  Warsitz was told there was no file and has never received any reports.  (Compl. ¶ 10).

Warsitz brings claims for intentional infliction of emotional distress ("IIED"), outrage, negligence, malicious prosecution, and violations of several statues:  the Individuals with Disabilities Education Act ("IDEA") and analogous state law, the Kentucky Civil Rights Act ("KCRA"), the Americans with Disabilities Act ("ADA"), and the Rehabilitation Act.  (Compl. ¶¶ 13-61).  Defendants move to dismiss the Complaint because they assert that it is barred by the administrative exhaustion requirement in the IDEA.  (Defs.' Mot. Dismiss 1).

## II.    JURISDICTION

This Court has subject-matter jurisdiction of this matter based upon federal question jurisdiction.  *See* 28 U.S.C. § 1331.  In addition, the Court has supplemental jurisdiction over the state law claims.  *See id.* § 1367(a).

### III.   STANDARD OF REVIEW

Defendants seek dismissal under Fed. R. Civ. P. 12(b)(1) for lack of jurisdiction and Fed. R. Civ. P. (12)(b)(6) for failure to state a claim.  The Sixth Circuit has not determined whether the IDEA's administrative exhaustion requirement is a jurisdictional issue but has twice implied that it is not.  *See Li v. Revere Loc. Sch. Dist.*, No. 21-3422, 2023 WL 3302062, at *10 (6th Cir. May 8, 2023) (citations omitted).  The Court will therefore analyze Defendants' motion under Fed. R. Civ. P. 12(b)(6) rather than Fed. R. Civ. P. 12(b)(1).  *See J.A. by & through S.A. v. Williamson Cnty. Bd. of Educ.*, 731 F. Supp. 3d 938, 950 (M.D. Tenn. 2024).

To survive dismissal for failure to state a claim under Fed. R. Civ. P. 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (citation omitted).  A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*  When considering a defendant's motion to dismiss, the Court will "accept all the [plaintiff's] factual allegations as true and construe the complaint in the light most favorable to the [plaintiff]."  *Hill v. Blue Cross & Blue Shield of Mich.*, 409 F.3d 710, 716 (6th Cir. 2005).

### IV.   DISCUSSION

The purpose of the IDEA is to ensure that "[a] free appropriate public education"—commonly referred to as a FAPE—"is available to all children with disabilities . . . ."  20 U.S.C. § 1412(a)(1)(A).  "Under the IDEA, an 'individualized education program,' called an IEP for short, serves as the 'primary vehicle' for providing each child with the promised FAPE."  *Fry v. Napoleon Cmty. Schs.*, 580 U.S. 154, 158 (2017) (citing *Honig v. Doe*, 484 U.S. 305, 311 (1988); 20 U.S.C. § 1414(d)).  An IEP is a "personalized plan to meet all of the child's 'educational needs'"

3

that "documents the child's current 'levels of academic achievement,' specifies 'measurable annual goals' for how she can 'make progress in the general education curriculum,' and lists the 'special education and related services' to be provided so that she can 'advance appropriately toward [those] goals.'" *Id.* at 158-59 (citing 20 U.S.C. § 1414(d)(1)(A)(i)(I), (II), (IV)(aa)).

The IDEA outlines a procedure for resolving disputes regarding whether a FAPE has been denied to a student. *See id.* at 159. First, a parent may file a complaint with the local or state educational agency. *Id.* (citing 20 U.S.C. § 1415(b)(6)). The parties may then have a preliminary meeting; they may also pursue mediation instead of, or in addition to, the meeting. *Id.* (citing 20 U.S.C. §§ 1415(e), (f)(1)(B)(i)). If the parties cannot resolve the issue, a due process hearing is held. *Id.* (citing 20 U.S.C. § 1415(f)(1)(A), (f)(3)(A)(i)). The hearing officer's decision may be appealed to the state agency, after which a parent may seek judicial review. *Id.* (citing 20 U.S.C. § 1415(g), (i)(2)(A)).

The IDEA is not the only federal statute protecting the rights of disabled students. For example, Title II of the American with Disabilities Act (ADA) and Section 504 of the Rehabilitation Act "cover both adults and children with disabilities, in both public schools and other settings." *Id.* The ADA forbids public entities from discriminating based on disability, and the Rehabilitation Act "applies the same prohibition to any federally funded 'program or activity.'" *Id.* (citing 42 U.S.C. §§ 12131-12132; 29 U.S.C. § 794(a)). "[B]oth statutes authorize individuals to seek redress for violations of their substantive guarantees by bringing suits for injunctive relief or money damages." *Id.* at 160 (citing 29 U.S.C. § 794a(a)(2); 42 U.S.C. § 12133).

Before a plaintiff may pursue these avenues, however, a plaintiff must exhaust the IDEA's procedures when the suit "'seek[s] relief that is also available' under the IDEA." *Id.* at 165

4

(alteration in original).  Thus, the exhaustion requirement does not apply if the relief is not for the denial of a FAPE or consists of compensatory or punitive damages.

First, a complaint seeking relief for any harms other than the denial of a FAPE is not subject to this exhaustion requirement.  *Id.* at 169.  "[I]n determining whether a suit indeed 'seeks' relief for such a denial, a court should look to the substance, or gravamen, of the plaintiff's complaint."  *Id.* at 165.  As the Supreme Court explained:

> One clue to whether the gravamen of a complaint against a school concerns the denial of a FAPE, or instead addresses disability-based discrimination, can come from asking a pair of hypothetical questions.  First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was *not* a school—say, a public theater or library?  And second, could an *adult* at the school—say, an employee or visitor—have pressed essentially the same grievance?  When the answer to those questions is yes, a complaint that does not expressly allege the denial of a FAPE is also unlikely to be truly about that subject; after all, in those other situations there is no FAPE obligation and yet the same basic suit could go forward.  But when the answer is no, then the complaint probably does concern a FAPE, even if it does not explicitly say so; for the FAPE requirement is all that explains why only a child in the school setting (not an adult in that setting or a child in some other) has a viable claim.

*Id.* at 171.  The Supreme Court also stated that "[a] further sign that the gravamen of a suit is the denial of a FAPE can emerge from the history of the proceedings."  *Id.* at 173.  If a plaintiff starts by filing a complaint under the IDEA but shifts to judicial proceedings prior to completing the IDEA's procedures, this "may suggest that she is indeed seeking relief for the denial of a FAPE— with the shift to judicial proceedings prior to full exhaustion reflecting only strategic calculations about how to maximize the prospects of such a remedy."  *Id.*  "Whether that is so depends on the facts; a court may conclude, for example, that the move to a courtroom came from a late-acquired awareness that the school had fulfilled its FAPE obligation and that the grievance involves something else entirely."  *Id.*

5

Second, the exhaustion requirement only applies when a plaintiff requests a remedy that the IDEA can provide. *Perez v. Sturgis Pub. Schs.*, 598 U.S. 142, 147-48 (2023). The IDEA provides "a relatively flexible remedial framework"—compensatory and punitive damages are not available under the IDEA. *W.A. v. Clarksville/Montgomery Cnty. Sch. Sys.*, No. 3:23-CV-00912, 2024 WL 2702436, at *12 (M.D. Tenn. May 24, 2024), *aff'd sub nom. William A. by & through E.A. v. Clarksville-Montgomery Cnty. Sch. Sys.*, 127 F.4th 656 (6th Cir. 2025); *W.R. v. Ohio Health Dep't*, 651 F. App'x 514, 519 (6th Cir. 2016); *Perez*, 598 U.S. at 147-48 (2023).

In this instance, Defendants assert that Warsitz "has not even initiated any of these prerequisite administrative procedures or remedies" under the IDEA. (Defs.' Mot. Dismiss 1). Warsitz does not contradict this assertion. (*See* Pl.'s Resp. Defs.' Mot. Dismiss, DN 8). Because Warsitz has not met IDEA's exhaustion requirement, any of Warsitz's claims that seeks the same relief as provided by the IDEA will be barred.

Defendants argue that all of Warsitz's claims should be dismissed, citing *Fry*. (*See* Defs.' Mot. Dismiss 5). Plaintiff, relying on the Supreme Court's decision in *Perez*, argues in her response that because she seeks compensatory and punitive damages, the IDEA exhaustion requirement does not apply. (Pl.'s Resp. Defs.' Mot. Dismiss 4). Defendants fail to address this issue in their reply. (*See* Defs.' Reply Mot. Dismiss, DN 9).

In this instance, Count One is brought under the IDEA and Count Four is brought under Kentucky law enacted to implement the requirements of the IDEA. *See Horton*, 2013 WL 4875025, at *2-3 (citing *Fayette Cnty. Bd. of Educ. v. M.R.D. ex rel. K.D.*, 158 S.W.3d 195, 199 (Ky. 2005)). Warsitz fails to state a claim under the IDEA or Kentucky's state law analogue because she has not exhausted her administrative remedies; Counts One and Four of Warsitz's

complaint are therefore dismissed. *See id.* (requiring exhaustion where the plaintiff asserted a claim under Title 707 of the Kentucky Administrative Regulations).

The remaining claims—violations of the KRCA and retaliation, violations of Title II of the ADA, violations of Section 504 of the Rehabilitation Act,[3] IIED or outrage, malicious prosecution,[4] and negligence[5]—provide for compensatory or punitive damages, or both. Defendants' motion to dismiss the remaining claims will therefore be denied.

## V.    CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** that Defendants' Motion to Dismiss (DN 4) is **GRANTED IN PART** and **DENIED IN PART**.  Counts One and Four are **DISMISSED WITHOUT PREJUDICE**.

**Greg N. Stivers, Judge**
**United States District Court**
May 6, 2026

cc:    counsel of record

---

[3] The KCRA, ADA, and Rehabilitation Act authorize compensatory, but not punitive, damages. *See* KRS 344.450; *Bragdon v. Faneuil, Inc.*, No. 5:21-323-DCR, 2022 WL 507430, at *3 (E.D. Ky. Feb. 18, 2022); *A. J. T. by & through A. T. v. Osseo Area Schs., Indep. Sch. Dist. No. 279*, 605 U.S. 335, 339 (2025); *Barnes v. Gorman*, 536 U.S. 181, 189 (2002); *Fry*, 580 U.S., at 160; *see* 29 U.S.C. § 794a(a)(2); 42 U.S.C. § 12133.

[4] Compensatory and punitive damages are available for IIED, or outrage, and malicious prosecution. *Burgess v. Taylor*, 44 S.W.3d 806, 814 (Ky. App. 2001); *Raine v. Drasin*, 621 S.W.2d 895, 902 (Ky. 1981), *abrogated by Martin v. O'Daniel*, 507 S.W.3d 1 (Ky. 2016).

[5] Compensatory, but not punitive damages, are available for simple negligence. *Henderson City Ry. Co. v. Lockett*, 98 S.W. 303, 304 (Ky. 1906).  Punitive damages are only recoverable in actions for gross negligence. *Id.*